371 So.2d 23 (1979)
Bertha J. BARDIN
v.
Wilson JONES.
77-646.
Supreme Court of Alabama.
May 18, 1979.
*24 W. Michael Young, Montgomery, for appellant.
Ira Dement, Montgomery and J. Fletcher Jones, Andalusia, for appellee.
FAULKNER, Justice.
The will of Minnie Faler was filed for probate by her executor but was contested by Bardin, a sister, and several others on the ground of undue influence. The case was transferred to circuit court for a jury trial where the circuit limited the issues to those raised in the probate court. At the close of contestants' case the court directed a verdict for the proponents from which Bardin alone appeals. We reverse and remand for further proceedings.
Minnie Faler, a childless widow of 91, died on July 13, 1977, leaving a will dated June 10, 1977. She had previously executed wills in January, 1977, and March, 1977. The January and March wills both divided the estate equally among her brother and sisters, but the June will left the lion's share to one sister, Cora Plant, with hefty bequests to some of Faler's nieces. The shares of her brother and other sisters were significantly reduced. The June will named Wilson Jones, an accountant, as executor. While Wilson Jones was not a beneficiary under the will, his wife, Jean, is one of the nieces who will profit handsomely under the June will and who would not have taken under the earlier wills.
Prior to March, 1977, Faler lived in Andalusia where she was cared for by her sister, Bertha Bardin (the appellant). In March Faler moved to an apartment in Florala two doors from another sister, Cora Plant. There was testimony that Cora Plant, Jean Jones, and several others did not want Faler in Florala, apparently due to an old enmity. They did, however, become friendly after the move.
In March Faler's business affairs were taken over by Wilson Jones. She executed a general power of attorney in his favor and substituted him as executor in her March will. He inventoried her assets and found them to be about $81,000.
In May after she suffered a fall Faler moved in with Cora Plant. A house was purchased with Faler's funds, the deed listing Faler and Cora Plant as joint tenants with right of survivorship. There was testimony that Faler did not know of the survivorship provision.
In June a new will was drafted by attorney Fletcher Jones (no relation to Jean and Wilson Jones), based on discussions among Faler, Cora Plant, Jean and Wilson Jones, and others who became beneficiaries. The will was witnessed by Fletcher Jones and his secretary, with Wilson Jones and Cora Plant present at the drafting conference. Percentage shares in the June will were prepared by Wilson Jones. At trial witnesses testified that several of the favored beneficiaries bragged to others about their influence on Faler and the drafting of the will. Testimony on Faler's mental capacity throughout these months was in sharp conflict. The contestants' case included considerably greater detail on the relationships between Faler and her relatives, much of which was denied by the proponents of the will. Of course, the credibility of the various witnesses would have been a question for the trier of facts.
*25 On appeal Bardin urges three grounds for reversal. First, Bardin states that the circuit court erred in striking certain paragraphs in contestants' answers relating to testamentary capacity. In doing so the court stated that it was limited to those issues transferred to it by the probate court, citing Hooper v. Huey, 293 Ala. 63, 30 So.2d 100 (1974). In Hooper we discussed § 43-1-78, Code 1975 (formerly Tit. 61, § 63, Code 1940), which provides for the transfer of a will contest to circuit court for a jury trial. That section states:
"Upon the demand of any party to the contest, made in writing at the time of filing the initial pleading, the probate court, or the judge thereof, must enter an order transferring the contest to the circuit court of the county in which the contest is made, and must certify all papers and documents pertaining to the contest to the clerk of the circuit court, and the case shall be docketed by the clerk of the circuit court and a special session of said court may be called for the trial of said contest or, said contest may be tried by said circuit court at any special or regular session of said court. The issues must be made up in the circuit court as if the trial were to be had in the probate court, and the trial had in all other respects as trials in other civil cases in the circuit court. ... After a final determination of the contest, the clerk of the circuit court shall certify the transcript of all judgments of the circuit court in such proceedings, together with all of the papers and documents theretofore certified to the circuit court by the probate court, back to the probate court from which they were first certified to the circuit court, and thereafter shall be recorded in the probate court as all other contested wills are recorded in the probate court."
This provision must be read in conjunction with § 43-1-70, Code 1975 (formerly Tit. 61, § 52, Code 1940) which provides:
"A will, before the probate thereof, may be contested by any person interested therein, or by any person, who, if the testator had died intestate, would have been an heir or distributee of his estate, by filing in the court where it is offered for probate allegations in writing that the will was not duly executed, or of the unsoundness of mind of the testator, or of any other valid objections thereto; and thereupon an issue must be made up, under the direction of the court, between the person making the application, as plaintiff, and the person contesting the validity of the will, as defendant, and such issue must, on application of either party, be tried by a jury."
In Hooper we stated, "The circuit court may consider only those issues transferred to it from the probate court and the resolution of these issues must be certified back to the probate court," citing what is now § 43-1-78. We are now presented with the question of whether or not a Rule 15, ARCP amendment or similar addition to the pleadings is permissible in the circuit court.
Initially we note that the Rules of Civil Procedure specifically apply to will contests "to the extent that the practice ... is not provided by statute." Rule 81(a)(5), ARCP. In addition § 43-1-74, Code 1975, provides:
"For the trial of such contest, depositions of witnesses may be taken in like cases, for the same causes and in the same manner, as depositions are taken in civil actions in the circuit court. In all matters relating to the organization and impaneling of the jury, to the evidence, mode of proceeding and investigation and determination of such contest, not specially provided for by this article, the court shall proceed and be governed by the same rules and regulations, so far as applicable, as prevail in courts of law in civil cases."
This section is further reinforced by § 43-1-78 itself which states, "The issues must be made up in the circuit court as if the trial were to be had in the probate court, and the trial had in all other respects as trials in other civil cases in the circuit court." In reference to this latter provision it has been observed, "`The issue should be *26 made up under the direction of the court on proper pleas specified in the contest as directed in [§ 43-1-70]. ... Parties to a cause are entitled to know in advance of trial what issues are to be met.'" Thigpen v. Walker, 251 Ala. 426, 37 So.2d 923 (1948), quoting Mindler v. Crocker, 245 Ala. 578, 18 So.2d 278 (1944). Thigpen went on to provide:
"It is also settled that in the trial of the issues of the contest certified out of the probate court to the circuit court under [§ 43-1-78] that the jurisdiction conferred on the circuit court is statutory and limited, and to warrant the exercise of that jurisdiction there must be pending in the probate court a valid contest when the probate court or the judge thereof enters the order transferring the contest to the circuit court. ...
"While it is well settled that the proceeding in the probate court to probate a will is in rem, it is clear from the provisions of the statute authorizing the removal of a contest to the circuit court, a court of law, that the proceedings in that court are inter partes and in personam to be tried and disposed of as other civil actions at law.
* * * * * *
"The jurisdiction and authority of the circuit court is limited to the trial of the issues presented by the contest after which the case must be certified back to the probate court."
From the above-cited authorities it is clear that the probate court prior to transfer could allow additional issues to be presented to it in accordance with the Rules of Civil Procedure, so long as those issues could properly be raised in a will contest. It may often happen that viable issues will not be revealed until depositions are taken, as is specifically authorized under § 43-1-74, supra. Consequently, we see no justifiable reason to limit the parties in the presentation of their case simply because the contest has already been transferred. Such a ruling would herald a return to the abandoned practice of "trial by battle" and would be an anachronism in a legal system in which the avowed purpose of procedural rules is "to secure the just, speedy and inexpensive determination of every action." In short we now hold that the circuit court following transfer of a will contest to it under § 43-1-78 can consider any issues presented in an appropriate pleading under the Rules of Civil Procedure, provided those issues can properly be raised in a will contest. Any language to the contrary in Hooper v. Huey is disapproved. Thus the circuit court erred in striking the paragraphs in contestants' answers relating to testamentary capacity.
Next Bardin asserts that the court should not have directed a verdict in favor of the proponents on the issue of undue influence. We agree.
"Our cases have consistently held that when undue influence is asserted in a will contest, the contestant has the burden, in order to raise a presumption of undue influence, to prove a dominant confidential relationship and undue activity in the execution of the will by or for a favored beneficiary. ... In other words, evidence must establish: (1) a confidential relationship between a favored beneficiary and testator; (2) that the influence of or for the beneficiary was dominant and controlling in that relationship; and (3) undue activity on the part of the dominant party in procuring the execution of the will." Pruitt v. Pruitt, 343 So.2d 495 (Ala. 1976).
In order to survive a motion for directed verdict the contestant must present a scintilla of evidence on each of these issues. Rule 50(e), ARCP; Rabon v. Rabon, 360 So.2d 971 (Ala. 1978); Loeb and Co., Inc. v. Martin, 295 Ala. 262, 327 So.2d 711 (1976); Reed v. Shipp, 293 Ala. 632, 308 So.2d 705 (1975). The evidence is, of course, viewed in the light and with all reasonable inferences most favorable to the non-moving party, Loeb, supra, and circumstantial evidence may be used to prove undue influence. Reed, supra. Here it is clear that a scintilla of evidence was presented on each of the three elements of undue influence. There was testimony that Faler relied on *27 several of the proponents to manage her personal and business affairs during the last months of her life. Cora Plant lived with and cared for Faler. Jean Jones was seen helping Faler sign checks while her husband, Wilson Jones, had complete control of Faler's business affairs, including a general power of attorney. There was testimony that some of the proponents bragged about their control over Faler and tried to prevent other relatives from influencing her. Finally, it was uncontroverted that several of the favored beneficiaries were present when the will was drawn and assisted extensively in its drafting, to the exclusion of the contestants. From these facts it is readily apparent that a jury could have found that undue influence was exerted by the proponents in the procurement of the will. The granting of a motion for directed verdict was improper and the case must be remanded for consideration by a jury.
Finally, Bardin contends that the trial court erred in not requiring the proponents to call both attesting witnesses. Difficulties arose over this point because Fletcher Jones, the attorney who drew and witnessed the will, also represented the proponents in the will contest. There was extensive discussion of the propriety of Fletcher Jones testifying and the scope of examination he could be subjected to. The trial court finally ruled that contestants could call him for limited examination if they wished, but contestants declined to do so. While it is true that the burden is on the proponent of a contested will to prove the will by both subscribing witnesses or account for their unavailability, Culver v. King, 362 So.2d 221 (Ala. 1978), Ferrell v. Minnifield, 275 Ala. 388, 155 So.2d 345 (1963), any error here was waived by the contestants. Consequently, we make no determination of the propriety of the trial court's ruling in this regard.
Because the circuit court erred both in striking contestants' allegations of lack of testamentary capacity and in granting a directed verdict in favor of proponents, the cause is reversed and remanded for further proceedings.
REVERSED AND REMANDED.
ALMON and EMBRY, JJ., concur.
BLOODWORTH, J., with whom TORBERT, C. J., concurs, concurs specially.
BLOODWORTH, Justice (concurring specially).
I concur in Mr. Justice Faulkner's opinion to reverse and remand this cause because the trial court erred in not submitting the issue of undue influence to the jury.
I had first thought that I could not agree with the other conclusion reached in the opinion, that after transfer from the probate to the circuit court of a will contest the grounds of contest could be amended to include additional grounds. I have now concluded that Justice Faulkner's rationale is sound and that there is no justifiable reason to limit the parties in their presentation of the case after transfer to the circuit court to those issues of the contest originally filed in the probate court. Of course, a valid contest must first be filed in the probate court, after a will is offered for probate, before the right would exist to have the contest transferred to the circuit court upon the demand of any party to the contest. Code 1975, § 43-1-78.
I think the trial court in striking the issue of "testamentary capacity" and in stating that it was limited to the issues transferred to it by the probate court, citing Hooper v. Huey, 293 Ala. 63, 300 So.2d 100 (1974), misinterpreted the language in Hooper v. Huey. In that case Mr. Justice Merrill, writing for this Court, stated:
"The circuit court may consider only those issues transferred to it from the probate court . ..."
The trial judge took this to mean that only the grounds of contest alleged and specified in the probate court could be the basis for the contest in the circuit court. I do not believe that this is so. What Mr. Justice Merrill wrote in Hooper v. Huey was that a circuit court had no jurisdiction to consider the contest of two wills, offered by an amendment to an existing will contest, by *28 which it was sought to contest the two additional wills on the grounds of undue influence, when the two additional wills were produced but never "offered" for probate in the probate court. In other words, under our statute, a will must have been "offered" for probate before it can be contested in either the probate or the circuit court. This not having been done, the contestant could not contest the two wills in an existing will contest in the circuit court. In this, Mr. Justice Merrill was eminently correct. He goes on to point out that the court would not leave the contestant remediless but that contestant could "offer" the additional wills for probate, then transfer the same to the circuit court, and, under Rule 42(a) of the Alabama Rules of Civil Procedure, the several will contests could be consolidated. Then, he discusses how the parties could be aligned and realigned under Rules 19 and 20 ARCP so as to promote trial convenience, prevent a multiplicity of suits, and expedite the litigation.
I see nothing in Hooper v. Huey which impinges upon the right of either proponent or contestant, upon removal of a contest to the circuit court, to amend the pleadings in that court under the authority of Code 1975, § 43-1-78, which states that the trial should be had in the circuit court upon the removal of a contest "in all other respects as trials in other civil cases in the circuit court."
It is therefore that I concur in the opinion.
TORBERT, C. J., concurs.